Filed 3/8/22  P. v. Velasquez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERVIN ANTONIO VELASQUEZ,<br><br>Defendant and Appellant. | F081876<br><br>(Fresno Super. Ct. No. F11906647)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Franson, Acting P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant and defendant Ervin Antonio Velasquez pleaded guilty to second degree murder and admitted the personal use of a firearm, pursuant to a negotiated disposition where he was sentenced to 15 years to life plus 10 years. He subsequently filed a petition for resentencing pursuant to Penal Code[1] section 1170.95, requested appointment of counsel, and asserted he was not the actual killer and had been convicted under the theories of felony murder and/or natural and probable consequences. The court did not appoint counsel, found appellant failed to state a prima facie case for relief, and denied the petition.

On appeal, his appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) This court requested supplemental briefing to address the California Supreme Court's interpretation of section 1170.95 in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), and recent amendments to that statute.

We will reverse the court's order that denied the petition and remand the matter for further appropriate proceedings.

## FACTS

As will be explained below, appellant entered a plea prior to the preliminary hearing. The following factual statement is from the summary of police reports contained in the probation report, which the trial court apparently relied on when it denied appellant's section 1170.95 petition for relief.

**Discovery of Victim's Body**

On the morning of November 13, 2011, a person looking for recyclable items opened a dumpster near Harvey and Maple Avenues in Fresno and discovered a woman's

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

body inside the bin. The police responded and identified the woman as Limbo Srey; her identification was in her clothing.

Srey had a single gunshot wound on the right side of her forehead, above the right eye, with a large amount of blood on her head. There were dirt stains on her back and pants, consistent with being dragged.

The coroner later determined Srey died from a perforation of the brain due to a single gunshot wound to the head, and her death was a homicide. A bullet was lodged between Srey's scalp and her fractured skull. The bullet recovered from her head was similar to a .38-caliber or nine-millimeter round. There were bruises on the inside of her upper lip and on her lower legs.

**Appellant's Initial Statements**

Shortly after finding the body, the police notified Srey's family of her death. Her family reported she had been living with appellant, her boyfriend, at his residence on East Olive.

The detectives went to appellant's residence and asked about Srey. Defendant invited the detectives inside, and they detected the faint smell of bleach in the house. The detectives asked when he last saw Srey. Appellant said they smoked crystal methamphetamine together on Saturday, November 12, 2011. She left sometime between 6:00 p.m. and 11:00 p.m. to sell her recyclables. He called her three times that night, but she never responded. Appellant said he again called her at 10:30 a.m. on Sunday, November 13, but she did not answer. He thought it was strange that she did not return home.

Appellant described Srey's clothing, which was consistent with the clothes found on her body. Appellant was not aware that Srey had problems with anyone. The detectives asked if he had any reason to hurt Srey, and he said no. The detectives advised appellant that they were investigating Srey's death and had already notified her family.

3.

Srey's hair had been matted with blood and contained twigs and leaves. When they were at appellant's house, the detectives noticed there were leaves on the ground outside that were similar to those found on Srey's body. The ground was wet, and the area was freshly raked.

**Appellant's Additional Statements**

On November 17, 2011, appellant's house was searched pursuant to a warrant, and he was taken to the police department for questioning.

Appellant was advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, waived his rights, and agreed to answer questions. Appellant said he smoked methamphetamine with Srey all day and night on Friday, November 11, 2011. He was upset at Srey because she had been stealing, and some guy would call her, and she would leave. On Saturday, November 12, 2011, they smoked crystal methamphetamine and had sex. At 1:00 p.m., Srey left to sell recyclables. Appellant said he called her around 3:00 p.m., and Srey said she was going to return. She was back at the house about an hour later. Appellant and Srey left, they bought more crystal methamphetamine, returned to the house, and used the drugs.

Appellant said they were lying on the bed together and talking, and he remembered that he had left a gun on the bed. He got up and smoked more methamphetamine. When he returned to bed, Srey was holding his gun and wanted to fire it because she was familiar with firearms. Appellant told Srey the gun was not for play and only for protection. Srey had the gun in her left hand, and appellant did not realize she had pulled back the hammer. Appellant said he sat up and tried to grab the gun, but "as he grabbed the gun, it went off." Appellant said Srey was shot above her right eye, and she was bleeding. He called out to Srey, " 'Look at what you did.' "

Appellant said he did not know what to do, so he carried Srey into the backyard and placed her next to a small tree. He tried to help her, but Srey did not respond. Appellant said his mind went blank, and he felt crazy because he had smoked

4.

methamphetamine. He thought about calling the police but knew it would be considered his fault. Appellant said they had previously moved a recycle bin to their house. He dragged Srey's body to that bin and placed her inside. Appellant admitted there were leaves in her hair from dragging her from his yard to the bin.

Appellant went back into the house, removed the bloody sheets from the bed, cut them up, and dumped the sheets and Srey's cell phone into the canal near McKinley and Chestnut Avenues. At 3:00 a.m., he pushed the recycle bin with Srey's body away from his house, and to the location where it was found the next morning.

During the interview, appellant demonstrated to the detectives how the shooting occurred, and sketched the location where he buried the gun on his property.

**Recovery of the Gun**

Appellant's house and property were searched pursuant to the warrant, and the criminalists found stains on top of a pile of concrete debris that tested positive for blood. There was a revolver, a box of Remington "38 Special" ammunition, and three loose cartridges wrapped inside of a plastic bag that were buried near a small tree on the property.

The detectives showed appellant the gun that was found buried on his property. Appellant identified the gun as his weapon, and again said Srey was shot as he took the gun from her hand.

The detectives advised appellant that based on the autopsy, his version of events did not match how Srey was shot. Appellant "again insisted that [the victim] held the gun in her left hand, and it was pulled and bent back directly at her, when it went off accidentally." Appellant denied being mad, jealous, or upset with Srey, and denied that he pointed the gun directly at her. Appellant said it was his fault because he never should have left the gun lying around, but it happened too fast, and he just reacted.

The detectives later advised the coroner about appellant's description of the shooting. The coroner said appellant's version of the shooting could not have happened.

5.

## PROCEDURAL BACKGROUND

On November 21, 2011, a felony complaint was filed in the Superior Court of Fresno County charging appellant with count 1, murder (§ 187, subd. (a)), with an enhancement for personally and intentionally discharging a firearm causing death (§ 12022.53, subd. (d)).

### Plea Hearing

On September 20, 2012, the court granted the prosecution's motion to amend the enhancement to allege a violation of section 12022.53, subdivision (b), that he personally used a firearm.

Thereafter, appellant pleaded guilty to second degree murder and admitted the amended firearm enhancement, pursuant to a negotiated disposition for a stipulated sentence of 15 years to life for murder plus 10 years for the enhancement. Appellant signed a felony advisement, waiver, and plea form stating the terms of the negotiated disposition, that the parties stipulated to the factual basis for the plea pursuant to *People v. West* (1970) 3 Cal.3d 595, and he waived his appellate rights.

At the plea hearing, the court advised appellant of his constitutional rights, and appellant stated he understood and waived his rights. The court asked defense counsel if he joined in the waivers, concurred to the plea, and "stipulate[d] to a factual basis for this plea based on the exchange of police reports with the DA's office?" Defense counsel said yes.

### Sentencing Hearing

On November 2, 2012, the court held the sentencing hearing and asked the parties if there were any corrections to the probation report, and the parties said no. The court reviewed the facts of the case and stated the murder victim was "found dead inside a recycling bin in the area of Harvey and Maple. Cause of death was gunshot wound to the head. [Appellant] ultimately admitted involvement, claiming that the victim was shot accidentally while he was trying to take a firearm from her. The coroner's report opines

6.

that the death could not have occurred as described by [appellant]." The court further noted that appellant pleaded guilty to murder and admitted a personal use enhancement.

The court sentenced appellant to 15 years to life for second degree murder, plus a consecutive term of 10 years for the section 12022.53, subdivision (b) firearm enhancement, consistent with the negotiated disposition.

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of appellant's petition for resentencing that he filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess. (Senate Bill 1437)), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 959, italics added.)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea

7.

offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 957.) *Lewis* held the language of

section 1170.95, subdivision (c) "is mandatory:  'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.'  [Citation.]"  (*Lewis, supra*, 11 Cal.5th at p. 963, italics added in original.)

Lewis also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]"  (*Lewis, supra,* 11 Cal.5th at p. 974.)  When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit."  (*Lewis,* at p. 968.)

Lewis further held that after appointing counsel, the trial court could rely on the record of conviction to determine whether the prima facie showing is made "to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis, supra*, 11 Cal.5th at p. 971.)  The record of conviction includes a prior appellate opinion, although it will be case-specific.  (*Id.* at p. 972.)  The prima facie finding under section 1170.95, subdivision (c) is limited, and the court must accept the petitioner's factual allegations as true and cannot reject the allegations on credibility grounds without conducting an evidentiary hearing.  (*Lewis, supra*, 11 Cal.5th at p. 971.)  " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]"  (*Ibid.*)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] [T]he 'prima facie bar was intentionally and correctly set very low.' "  (*Id.* at p. 972.)

Lewis held the court's failure to appoint counsel only constituted state error subject to review under *People v. Watson* (1956) 46 Cal.2d 818.  (*Lewis, supra*, 11 Cal.5th at p. 973.)  In that case, *Lewis* held that counsel could have assisted the defendant "in making a prima facie factual case that his conviction for murder rests on the now-

9.

forbidden natural and probable consequences reasoning," and remanded the matter for "an evaluation of prejudice under *Watson* in the first instance." (*Id*. at p. 975.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020-2021 Reg. Sess.; Stats. 2021, ch. 551, § 1 (Senate Bill 775).) As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory *under which malice is imputed to a person based solely on that person's participation in a crime*, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a), italics added.)

The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After appointment of counsel, the parties shall have the opportunity to submit briefing, and "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id.*, subd. (c).)

If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so. (§ 1170.95, subd. (c).)

Senate Bill 775 also amended section 1170.95 to clarify that after the court issues the order to show cause and conducts a hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

10.

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

## APPELLANT'S SECTION 1170.95 PETITION

On January 17, 2020, appellant filed, in pro. per., a petition for recall and resentencing of his murder conviction pursuant to section 1170.95 and requested appointment of counsel.

The petition was supported by appellant's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that stated he was entitled to resentencing under section 1170.95 because a complaint was filed against him that allowed the prosecution to proceed under a theory of "felony murder or murder under the natural and probable consequences doctrine," he pleaded guilty or no contest to first or second degree murder in lieu of going to trial because he believed he could have been convicted of first or second degree murder "pursuant to the felony murder rule or the natural and probable consequences doctrine," he "could not now be convicted" of first or second degree murder under the amended versions to sections 188 and 189, he "was not the actual killer," he did not, "with the intent to kill, aid, abet, counsel … or assist the

11.

actual killer in the commission of the murder in the first degree," he was "not a major participant in the felony or … did not act with reckless indifference to human life during the course of the crime or felony," he was convicted of second degree murder under the "natural and probable consequences doctrine or under the 2nd degree felony murder doctrine" and could no longer be convicted under those theories after the amendments to section 188, effective January 1, 2019, and there has been "a prior determination by a court or jury that [he] was not a major participant and/or did not act with reckless indifference to human life" under section 190.2, subdivision (d).

**The People's Opposition**

On February 7, 2020, the prosecution filed opposition to the petition, and recited the facts from the law enforcement reports, as summarized in the probation report and quoted above. The prosecution argued appellant failed to make a prima facie case for relief because he was charged and pleaded guilty as the actual killer of the victim and acted with malice. The prosecution argued that appellant's allegations that he was convicted based on theories of felony murder and/or natural and probable consequences were not supported by the record, and his petition should be dismissed.

**Denial of the Petition**

On May 20, 2020, the court issued an order that denied appellant's petition with prejudice and found he failed to make a prima facie showing that he fell within the provisions of section 1170.95, because he was the actual killer, he was not convicted as an accomplice under the natural and probable consequences doctrine, and he was not convicted of second degree felony murder.[2]

---

[2] The prosecution also moved to dismiss the petition based on the claim that enactment of Senate Bill 1437, that resulted in section 1170.95, was unconstitutional. The court did not address the constitutional issue, presumably because it denied relief on the merits.

12.

## APPELLATE BRIEFING

As noted above, appellant's counsel filed a *Wende* brief with this court.[3] The brief also included the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on March 5, 2021, we invited appellant to submit additional briefing.

**Appellant's Pro. Per. Brief**

On March 22, 2021, appellant filed, in pro. per., a brief and asserted the facts set forth in his petition "must be taken at face value and cannot be weighed against the record of conviction" to determine if he made a prima facie case for relief, and counsel should have been appointed. "The perfunctory denial of such a petition without appointment of counsel runs contrary to the spirit of the statute," and section 1170.95 anticipates that the petitioner should have the opportunity to present additional facts demonstrating his entitled to relief.

Appellant argued the failure to appoint counsel was constitutional error, and a harmless error analysis would be speculative. Appellant requested remand for appointment of counsel and further briefing as to whether he was entitled to relief under section 1170.95.

**The Parties' Additional Briefing**

On December 14, 2021, this court ordered the parties to file supplemental briefing addressing the effect, if any, of *Lewis* and Senate Bill No. 775's amendments to section 1170.95, on the trial court's denial of appellant's petition for resentencing, and the issues raised in appellant's pro. per. supplemental brief. Both parties filed supplemental briefs.

---

[3] On September 22, 2020, the Clerk of the Superior Court of Fresno County filed the "Certificate of Mailing" of the trial court's order denying his petition on May 20, 2020. On October 9, 2020, appellant filed, in pro. per., a notice of appeal, supported by his declaration that he received the May 20, 2020, order on September 28, 2020; a copy of the clerk's "Certificate of Mailing," dated September 22, 2020; and a prison mail log showing that he received the documents on September 28, 2020.

13.

Appellant (represented by counsel) argued that the trial court should have appointed counsel to represent him since he requested an attorney in his petition, and the failure to appoint counsel was prejudicial under *Lewis*. Appellant further asserted the court improperly made factual findings when it found he failed to state a prima facie case for relief because it relied on the statements contained in the probation report. Appellant requested this court remand the matter for the trial court to appoint counsel and conduct further appropriate proceedings.

The People agreed the trial court committed error when it failed to appoint counsel before finding appellant failed to make a prima facie case for relief. However, the People asserted the error was not prejudicial because the record of conviction, consisting of the summary of police reports contained in the probation report, showed that appellant was the actual killer, "a direct perpetrator," and "played a critical role in the murder," and not eligible for relief under section 1170.95.

## DISCUSSION

We find that the matter must be remanded because the court's failure to appoint counsel was prejudicial. Appellant requested appointment of counsel in his section 1170.95 petition, the court failed to do so, and found he failed to state a prima facie case for relief in a summary order. A preliminary hearing was never held in this case, and the court made its prima facie determination apparently based on the summary of the police reports, as contained in the original probation report and recited in the prosecution's opposition.

While the trial court was entitled to consider the record of conviction to make the prima facie determination, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 972.)

14.

Appellant's section 1170.95 petition declared he was eligible for relief under every possible statutory theory, including that he was not the actual killer. Although the record of conviction contained evidence that appellant was the actual killer, and there is nothing to support a felony-murder theory, it did not conclusively establish that he was ineligible for relief as a matter of law. According to the police reports, appellant told detectives that Srey had the gun in her left hand, he did not realize she had pulled back the hammer, he tried to grab the gun, and "as he grabbed the gun, it went off" and she was shot above the right eye. When advised that his version did not match the autopsy, appellant "again insisted that [the victim] held the gun in her left hand, and it was pulled and bent back directly at her, when it went off accidentally."

Thus, according to appellant's pretrial statements, Srey was holding the gun and the fatal shot was fired as he tried to take it away from her, attempting to refute the detectives' claims that he was the actual killer. There is clearly strong evidence that appellant was the actual killer, based on the statement in the police reports that his account was inconsistent with the coroner's findings. In finding appellant failed to make a prima facie case, however, the court necessarily made factual and credibility findings from the police reports summarized within the probation report, without appointing counsel or holding an evidentiary hearing. The authority "to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d), is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Aleo* (2021) 64 Cal.App.5th 865, 871–872.)

The court's failure to appoint counsel constituted prejudicial error because the petition's allegations, compared to the limited record, created a factual dispute. The matter must be remanded for appointment of counsel and further appropriate proceedings.

## **DISPOSITION**

The court's order of May 20, 2020, denying appellant's section 1170.95 petition for relief, is reversed. On remand, the court is directed to appoint counsel and conduct further proceedings as required by section 1170.95.